Roberts, you may proceed. May it please the Court, my name is Allison Roberts and I am here on behalf of the appellant Jack McFarland and I would like to reserve two minutes for rebuttal if time allows. The district court in this case erred with respect to two issues. First, the statute of limitations has not yet run under the Quiet Title Act. In Michelle, this court held that when the plaintiff claims a claim of ownership may be entirely consistent with a plaintiff's claim. And as in Michelle, Mr. McFarland's claim of access to Glacier Route 7 did not accrue until he knew or should have known the government claimed the exclusive right to deny his historic property. That wasn't until what, 1999? December of 1999 was the first time Mr. McFarland was ever denied access to his property. And this was when he received an e-mail saying that the policy of the Park Service had changed and that once Glacier Route 7 would be closed to the general public, in-holders would no longer be able to drive the route as well. Therefore, because the first instance of notice was in December of 1999, we are still well within the 12-year statute of limitations period in the Quiet Title Act, and Mr. McFarland's Quiet Title claims are still alive. Secondly, Mr. McFarland's Administrative Procedure Act claim, which challenged the Park Service's denial of his special use permit, is not subject to the statute of limitations in the Quiet Title Act as Judge Malloy held at the district court level. The denial of his special use permit application is a straight APA claim. It's not a Quiet Title. But Judge Malloy apparently felt that the APA claim was just a back doorway of getting around his order with respect to the Quiet Title action. What's your response to that particular observation? Our response to that is that his APA claim does not depend on the resolution of his Quiet Title Act claim. They're independent claims. He's not seeking to Quiet Title to Glacier Route 7 in his APA claim. He's merely seeking the permissive use of Glacier Route 7 during the wintertime when it is closed to the general public. He's seeking judicial review of the denial of that permit that he had asked for and was turned down for. Correct. And that is what his APA claim is all about. It's not trying to Quiet Title to Glacier Route 7 in his favor. APA claim is just What's our scope of review on such petitions for review? Well, we look to see whether the denial of the permit was arbitrary and capricious, which here we believe that it was. Park Service didn't state with specificity why they denied Mr. McFarland's application, presumably based it on the snowmobile ban, the However, Mr. McFarland, when the snowmobile ban came out, Mr. McFarland's grandparents owned the property. They never used snowmobiles. They never, they didn't even own a snowmobile. So to base his permit request, his permit application on the 1975 snowmobile ban when that wasn't the use that Mr. McFarland was requesting was arbitrary and capricious. Well, didn't he attempt to use a snowmobile once when there was a lot of snow? In his permit application, he requested to be able to drive the road, plow the road and drive the road. And if that was not if that was not if he was not able to do so because of the amount of snow to use the snowmobile for the limited purpose of getting to and from his property. But at that time, he still did not own a snowmobile. It was just for the limited purpose of if there was too much snow to be able to get to and from his property, not for recreational purpose, just for the limited purpose of accessing his private property. I'd like to return briefly to the original claim of the easement. What is the scope of the easement that your client is claiming? Is it a right of unlimited access? He believes that he owns an easement under three different theories, necessity, implication and express. And the scope of that easement, if he decided to turn his place into a winter resort, that that would be open to unlimited commercial access by persons who use that facility if you were if your client were granted that access? I don't believe so. I believe Mr. McFarland intends to just keep this as a private residence, single family. Well, I understand what he wants to, but I'm asking about the legal scope of the claim which your client is making, that it's a right of unlimited access over that road by anybody he chooses to invite to the premises. Correct. Okay. Is there any evidence in the record about who controls the right to build bridges across the stream from the county road to his property, which I take it is adjacent to the river, that is, he runs right to this creek or river or whatever it turns out to be? He does. I'm not sure. In terms of an easement of necessity, which I take it is one of the claims which has been made in this case, is there any evidence in the record about the feasibility of the building of a bridge to accommodate higher stream flows and so on from the county road to his property? Not that I'm aware of. Our easement by necessity claim is over Glacier Route 7. I'm not aware if it's feasible to place that easement over a bridge. Okay. As a matter of fact, given Judge Malloy's ruling, any evidence as to the scope of the easement of necessity or any evidence as to rights retained as to building the bridge were not gone into in the district court because he ruled on the statute of limitations, right? Correct. He granted defendants' motion to dismiss for lack of subject matter jurisdiction, so the merits of our claims were not addressed. Is there any showing the record of this county road, not the federal or at least not the Park Service road, but the county road is functioning and would provide access to this property? As far as I know, the county road is functioning. At this point, the way he's been accessing his property would be either to ski in or to wade across. There's mention in the record of people wading across the river to get onto the other side and accessing property that way. I couldn't tell from what I saw. Was the county road there at the time the deed was made from the United States government, the predecessor in interest? We don't know that. I don't believe we know that. Do you want to reserve the rest of your time? I'll reserve the rest of my time. You may do so, counsel. Thank you. We'll hear from the Governor. Good morning. My name is Todd Kim from the Department of Justice for the Federal Appellees. A few points we should make. First, the appellant has consistently characterized the December 1999 letter to the appellant as the policy change decision. That is not true. It merely reaffirms the longstanding policy of the National Park Service, which played into the district court's statute of limitations analysis. Notably, we haven't discussed at all the reasons why the district court found the statute of limitations had not been complied with here. Let's begin with the 1975 prohibition on snowmobiling throughout the park. That's adverse. As I understand the argument, nothing between 1975 and 1999 would have prevented a use consistent with access to the property. It wasn't until 1999 that these owners were specifically prevented from having access. Am I misreading or misunderstanding the other side's argument? I believe so, Your Honor, with all due respect. Sure, sure. National Park Service, it should be made absolutely clear, has never denied access to Mr. McFarland or anyone else anytime they wanted. The question here is specifically the question of whether they have a property right to motorized access in particular in the wintertime. That access, whenever they wanted to. When you say motorized, is that jet ski or SUV or both? I mean, is there a difference when you say motorized? Do we – what do we mean by that? I think we mean in particular. Let's look at Mr. McFarland's request for special use permit. There he requested the opportunity to drive the roads at times when the road was closed, and also to snowmobile at times when driving was impractical. Now, does motorized include snowmobile, or is that a separate issue? I think it includes both. I mean, regardless of how you precisely characterize their claim to a property right, and I agree that it's not clear exactly what they're seeking here. But it is clear from the briefing in the district court that what they sought specifically included some type of motorized access, whether it's by vehicle, after plowing, or by snowmobiling. There's nothing about jet skiing or anything of the sort there. Does the government concede that if they hooked up a horse and wagon and drug it through the snow, that they would have that right as a matter of right, that that easement existed from the beginning? I don't know if I'd characterize it as an easement, Your Honor. That's a word that, of course, has different meanings. If Mr. McFarland wanted to take a horse to his property, my understanding from the court service is that he would. Well, what would that right have been if it wasn't an easement? Well, they make the argument that there is an implied easement here under the Homestead Act. The Tenth Circuit, for instance, in the Jenks case, made clear the Homestead Act does not grant any such easement. I checked my church clerk's check. I wasn't on any of those panels. Okay. If your clerks want to check, that's fine with me, Your Honor. But the Jenks case, I think, makes clear that there is no such property right. Now, let me get to the bottom line. Yes, Your Honor. Does the plaintiff have, as a matter of right, legal right, the right of access to that property at any time of the year over this road? Your Honor, first, I should note, of course, that question is not before this Court. But let me get to your question. Well, let's answer it anyway. Yes. Absolutely right. It has some bearing on this. I don't think that ---- It has some bearing in my analysis of when the statute of limitations began to run. Yes, Your Honor. I certainly don't think that Mr. McFarland has an easement of any sort. Whether the National Park Service could actually restrict access in such a way as to deny access would go into an APA analysis of whether the National Park Service acted in an arbitrary and capricious manner. I should note, they say their APA claim is not subject to the statute of limitations. This Court has made clear in cases like Nevada that to the extent an APA claim depends upon the resolution of Quiet Title Act issues, that is subject to the Quiet Title Act statute of limitations. Their APA claim was dependent primarily upon their assertion of a property right. Is it your position that they don't have a common law property right? The most they have is an APA agency right? Is that what you're saying? I'm saying they don't have an easement through any of the theories that I presented here. They don't have a common law easement. They don't have a property right. They only have what the Forest Service in their good faith administration of the laws wants to give them, right? Well, first, it's not the Forest Service. Actually, it's the National Park Service. The National Park Service. I haven't plumbed the depths of every possible permutation of the common law. I've addressed the theories that they presented here, which for the reasons in our brief. So they have no common law rights of any of the theories that they've stated. It's up to the agency to give them whatever the agency under the law wants to give them, right? Well, yes, Your Honor. I think in the end, that's right. But I should emphasize, I believe what the agency has done here is perfectly reasonable. Wait a minute. With respect to that, do I understand the government to be saying that there is no right of access to this landlocked piece of property whatsoever? No. I'm not saying that, Your Honor. That's the way it certainly sounds. I'm saying that the theories they have presented are not supported. You were asked by Judge McKay whether, what kind of access this property is entitled to. And I never really got an answer to that. But it seems to me as if the government is saying that either there is no right of access whatsoever under any theory, easement, easement of necessity, implied easement, whatever, that the government can simply say for whatever reasons that are convenient to the government that it can close off access to this property any time it wants. That's the way it sounds. So I'm giving you a chance to restate it in a way that perhaps I'm misunderstanding it. Okay. Let me try to answer your concern here. What I'm saying here is that we have looked at the common law theories they have presented, and those theories are not supported here. There may be, as the Tenth Circuit found in Jenks, implied license for parties who obtained patents to land under the Homestead Act to access their property over Federal land. That license, however, is regulable by the National Park Service. And Congress has directed that the National Park Service is to regulate such land in a manner consistent with the purposes for which national parks are founded. If this were an easement of necessity, if it was concluded, if the proof and so on made this an easement of necessity, what does the law tell us about the power to regulate the easement of necessity? Is it limited entirely to reasonable access? Isn't that the test, if this is an easement of necessity rather than an easement of privilege? There is actually a conflict between some of the courts, as we noted, whether the test is one of strict necessity or reasonable necessity. I don't think this Court needs to get to that question, not only for the statute of limitations. Well, that's whether the easement exists or not. But if the easement does in fact exist, what is the power of regulation or what is the test for the power of regulation of use of that easement? I think if there were an easement of necessity, then the test for the scope of the allowable regulation by the government would be based upon the purposes for which Congress in this instance set this land aside under the Homestead Act. Would the regulation interfere with Congress's reasons for allowing this land to be patented? Here, we all agree the Homestead Act was passed by Congress to allow parties to enter upon public land to use it for some purpose. If the regulation were to deny a party the ability to effectuate Congress's purposes under the Homestead Act, that regulation would probably go too far. Well, if there's an easement of necessity, it obviously would have arisen at the time of the grant. Yes, Your Honor. And there wouldn't be any statute of limitations problem on it unless the government did something clearly and explicitly to demonstrate that its claim was in derogation of the scope of the easement of necessity. Isn't that right? I think that's about right, Your Honor. I mean, if you look at this Court's precedents, the question is whether the government has manifested its view that its property rights over the area are inconsistent with the claimed property right by the person trying to seek to quiet title. Is this property subject to ANILCA? No, Your Honor, it's not. Would that have made a difference, by the way? It might have, Your Honor. Frankly, I haven't analyzed the ANILCA side of things. Obviously, it hasn't been an issue here, so I couldn't express a view on that. I should note the government here did express its view that the putative property right, whatever that may be, but it has to be at least motorized access according to the appellant, isn't something the government thought that Mr. McFarland had. And the government made that view clear in 1975 with the snowmobiling ban. In 1976, with the stringing of a cable and a lock across this road to which property owners had to come to NPS to request access to the roads, if they had this property right, that was inconsistent with the National Purchase Act of 1976. If I have a little trouble with that being inconsistent, all that means is, is that the government restricted people other than persons who had the right of easement from coming, and that the government granting the key doesn't, at least for a matter of summary judgment, appear to me to be inconsistent with their right of access if, in fact, we have evidence or if, in fact, they had an easement of necessity. I respectfully disagree, Your Honor. If you look at the undisputed evidence in the record, look in particular at the deposition testimony of Paul Snyder at pages 349 to 51 of the Supplemental Objection Record. He makes clear that the request was made to National Park Service who would allow access by inholders only when the road was drivable. The National Park Service made that determination, not the inholders. If they had this property right, they wouldn't be coming to the National Park Service to ask for permission and have the Park Service determine whether it would be granted depending on whether the road was drivable. It's also consistent with the deposition testimony of various park officials in the record. Obviously, that's cited in our brief. The fact is the statute of limitations is triggered when it's clear to a property owner or should have been clear to a property owner that his claim is inconsistent with the government's view of the property. Kennedy. But Farland, in those days, wasn't trying to go out there in the wintertime. It may have been the subjective, unexpressed and uncommunicated intent of the government to say the keys were not allowed when the road was not drivable. But that – there wasn't any clash between McFarland and the agency at that time, was there? I don't know if that's true. It only came later when McFarland decided to live year-round, God knows why, up there. Two points. And I know I'm out of time. So can I answer the question? Sure. Just answer the question. Certainly. The first response to your question is that whether Mr. McFarland knew earlier would be a question of fact. The second response is that, in fact, whether Mr. McFarland knew or not actually is irrelevant. The Quiet Title Act puts in force a reasonable owner standard, and that's in Schultz. It's the statutory language is new or should have known. It may be reasonable. The question is, when was it exclusive, and therefore, when was the government's position of exclusive use communicated to McFarland? That's when the statute says. No, it's not when it's communicated to him directly. It's when the government makes it clear in a way such that a reasonable landowner should have known. We understand your argument, counsel. Thank you. Your time has expired. Ms. Roberts, I believe you've got some reserve time. I just have a couple of points I'd like to make here. The government made clear that they were claiming an exclusive right to Glacier Route 7 in December of 1999. Prior to that time, Mr. McFarland was never denied access to his property in the winter. He was able to move wooden barriers. He had a key to a lock. He never once was denied this access to his property until December of 1999. Did he actually – is there evidence in the record that he actually exercised that right during the wintertime before 1999? I believe he visited the property a couple of times. Do you have that in the record? Do we have that in the record? I believe so. And so the Quiet Titles – And he had a key, actually. He didn't have to go out. He had to ask for it in the first instance, but they left the key with him? He had a key, yes. The gate had a double lock system. One was for the Park Service, one was for an inholder. Either person could unlock the gate by themselves. You didn't need both parties there to get past the gate. So he did have a key to the gate. In 1999, he did receive an email from the Park Service saying that a policy decision had been made that once the road was closed to the general public, it would now be closed to inholders. That was the first time he'd heard of this. And then they also removed the inholder's lock at that time. So even if he wanted – Is there any record from the government side that would have traced that new policy stated in 1999 back to an earlier time? Not that I'm aware of. The first time Mr. McFarland was aware of this was in that 1999 email. Well, the government makes the argument it's not what Mr. McFarland was aware of. It's what was the public notice given by the department or by the Park Service in this case. I'm not sure. I mean, I know that they made these instances of notification to the general public. That was well known. General public was not allowed to get on Glacier Route 7 once it was closed to the winner. Inholders were. Inholders always were. Okay. And secondly, we'd just like to reiterate the fact that his APA claim is still alive. It's not based on a property right. It's based on the permissive use to use Glacier Route 7 in the wintertime. It does not depend on the resolution of his Quiet Title Act claims. It is completely independent. And because we didn't have final agency action until April of 2000, that claim is still well within the six-year statute of limitations and is still alive and should be resolved. Let me just come back to an earlier question I asked the board. Will you see if I can understand it? Because I don't think it was quite clear in the brief. Is it your claim that you have an easement of an inholder's easement of some kind or another of unlimited access over that route to the inholder's property? Well, I believe that the scope of the easement would be determined at a later date. At this point, it's just resolving whether or not that easement exists. All right. And then at a later time go into the scope of it. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument in Skranek v. Castaneda, which is a case involving similar issues, it appears.
judges: McKay , O'scannlain, Bea